This matter on calendar is Comcast of California v. Sacramento Metropolitan Cable and we have two cases 17-16847 and 17-16923 and my understanding before we start the clock running is, just so that I have it on the record, is you've reached some sort of agreement as to how you're going to split your time. Can you please state your appearance, who you're appearing for, and then tell me about that? Yes, Your Honor. May it please the Court, Fred Rowley, Jr. for the Comcast Appellants. And with the Court's permission, since there is a cross-appeal, I'd like to reserve seven minutes, two minutes for the rebuttal on the appeal, and then five minutes for my colleague Mr. Wu to address SMCTC's arguments on the cross-appeal. So that's how we'd like to divide our time. All right. So that added up to 15, 8 and 2 and 5, right? Yes, Your Honor. So you're only going to get up now and use 8 and then sit down or I pull you down? Yes, Your Honor. Okay. And then you'll come back with your two minutes on rebuttal and that your colleague will speak on the cross-appeal? That's right, Judge Kavanaugh. Okay. All right. Then we're ready to go. With respect to the appeal, the District Court erred as a matter of law in concluding that the user fee that the DVCA statute applies to cable operators like Comcast, what we call the CPUC fee in our briefs, that that fee is not a franchise fee for purposes of the Cable Act. Under the plain language of the Cable Act, the CPUC fee is a franchise fee because the only reason it's imposed on cable operators like Comcast and the only reason why Comcast pays that fee is because of its status as a cable operator. For that reason, the CPUC fee properly counts toward the 5 percent cap on the franchise fees that the State of California may charge cable operators like Comcast. The controlling language can be found at section... I get to before I even get to this issue, which is, why doesn't this cause of action arise from cable regulation? So Your Honor, that is a matter that is part of the cross-appeal, and my colleague, Mr. Wu, can address it. Oh, you're going to leave that for him? I am, Judge Smith. But I can quickly address it by saying... I mean, to be fair, it seems to me, if that is the truth, then we're done. Your Honor... So I'm a little worried. You're up here talking and I listen to you, and yet that seems to be the big issue. Your Honor, on the cross-appeal, and with respect to that particular issue, my colleague... I'm glad to let him talk about it. I was just telling you why I asked that question first. The reason why it doesn't apply to regulation, and I'll let my colleague, Mr. Wu, amplify with his five minutes, is that it really arises out of the seizure of the security deposit by SMCTC. With respect to the issues on appeal, the reason why the CPUC fee is a franchise fee is because there's only one reason why Comcast pays it, and it pays it because it's a cable operator. The Cable Act requires... Well, aren't all entities regulated by the California Public Utilities Commission assess similar fees, tailored to whatever services they offer? Judge Smith, those fees, like utility fees or common carrier fees, are imposed under separate statutes. They are deposited into distinct accounts. They go to address different regulatory objectives. They cover different regulatory... But why isn't it just a fee of general applicability? Because the CPUC fee provides the general benefit to the public, right? Your Honor, it's not a law of general applicability for several reasons. First, if you look at the CPUC fee, what we call the CPUC fee, the plain language of Section 442B of the Public Utilities Code, that fee references Section 542 of the Cable Act, and that is the franchise fee provision under the Cable Act. It's hard to see how that fee, given that it references the Cable Act, could be a law of general applicability. The other thing is if you look at subsection... That fee applied to other entities besides cable companies, though? It does, Judge Olguin. It can apply on its face to OVS, open video service operators, but that doesn't matter because the test under Section 542G1 just asks why the tax or the fee is imposed on a cable operator. So the only reason why it's imposed on cable operators like Comcast is because they're cable operators. The fact that it might also apply in theory, and Judge Olguin, we're talking about in theory because SMCTC hasn't pointed to a single operator that would not be in the State of California that wouldn't be subject to the Cable Act, but even if in theory it could apply beyond cable operators, it doesn't matter because the test is why the tax or fee is imposed on cable operators. And the fact... Let me stop you. Why can't I find that Comcast pays this fee not because of its status as a cable or video service provider, but simply because it's a regulated entity? What prevents me from finding that? There's a number of... So, first... I mean, I'm trying to figure out, I looked through these different statutes trying to determine how to deal with this, but I guess I couldn't find that statute which would say I couldn't suggest that it was just a regulated entity. So, Your Honor, it's just the plain text of the Cable Act. First, the definition of franchise fee. It asks why a tax or fee is imposed on a cable operator. I would note that both the provision governing franchise fees and the provision that governs the cap on the 5% cap on franchise fees, and I'm speaking here of Section 542B, which is excerpted at Appendix A-9, both of those provisions focus on a cable operator, so we're not even talking about cable operators as a category. It's why is the tax imposed on a cable operator, and this tax or fee has to be paid by Comcast as a condition of its franchise, and Comcast has to have that franchise under the Cable Act to provide cable services. So there's only one reason why Comcast pays this fee, and it's because it's a cable operator. I would note, Judge Smith, to your question, that if you construed the statute to apply to or to say, well, it's not a franchise fee simply because it applies to competing entities beyond cable operators, it would create a number of anomalies. So let's look at the statute. But can you also argue that the CPUC fee is fee should be excluded from the 5% franchise fee cap under the Cable Act, right? Yes, Your Honor. It should be deducted. Is that a consistent argument? It is the same argument, Your Honor. It is exactly the same argument, and part of the reason why you can see that is consider what you would do to both the statutory text and to the structure of the DVCA statute and the Cable Act if you read it the way the district court did, which goes to Judge Smith's question. Why can't you read it not to be a franchise fee? Because California has defined its franchise a little more differently and a little more broadly than the Cable Act. Here's what you're basically doing. You're taking the word solely, right, which right now modifies the phrase because of their status as such. Yes, that's what I'm doing. That text, that test asks, why is this fee imposed on a cable operator? And you're moving it several words before that phrase so that it says imposed, quote, solely on a cable operator or cable subscriber. That's the interpretation that the district court adopted, and it rewrites the statutory text. The text doesn't ask whether the tax or fee is imposed solely on a cable operator or solely on a cable subscriber. It asks whether it is imposed solely because of their status as such. Those are fundamentally different. And, yes, Your Honor. Can I change from a CPUC fee to the PEG fee? Your Honor, that's another, that's also a cross-appeal issue. Okay. Then I can't talk to you about that. All right. Well, I'm happy to address it, but I just want to make sure. I'm just trying to make sure that, because we've got two fees here, we've got CPUC and then we've got the PEG fee, so I'm just trying to make sure. Sure. And you don't want to talk about the deposit at this point? Well, Your Honor, at this point, I just want to make sure we use our time to answer. Well, I think I've heard what you've had to say here. Now I have some questions for the opposition. Sure. So I guess I don't have anything. If it's only CPUC, what do you want to talk about? Well, I guess. Judge Smith, can I add? Well, I guess. Okay. So while we're on that. Yes. Just because, and I'm going to take you just a little over on that. Sure. But, okay. So if you lose on the 55AA, if it bars this lawsuit, then do you have any recourse on the security deposit? Well, Your Honor, that's why we brought the suit, because they seized the security deposit. Well, no, but that's not answering my question. If we say you're barred, is there any other way you can get your security deposit back? No, Your Honor, because they've transferred it to the general fund. Well, but just a minute. It seems to me that all you have to do is deduct it from, deduct whatever funds it is that they have from payments which will come in the future. Well, Judge Smith, we've already, we have been deducting it. Well, that's what you're doing now. And if we say that's okay, then you continue to do it, right? Well, Your Honor, if the court construes the statutes the way that we urge, then we would be entitled to the money, Your Honor. And we don't think that 55AA bars the lawsuit at all. And on top of that, why didn't you just request that the deposit be returned when the agreement with Sacramento terminated by operation of law? We did ask for the deposit to be returned, Your Honor. But we had been, what happened, Judge Smith, what happened was that we had been deducting the PUC fee from the 5% franchise fee. We had also been excluding the PEG fees from the gross revenues that were the basis for the calculation of. So you've done your own self-help. That's right. So you couldn't really ask for the deposit back. Well, we asked for the deposit back and then they, the SMCTC argued that that was a set off and they interposed that as a defense. Well, but just a minute, why didn't you, when the thing stopped in 2011, just request that it be returned? Well, Your Honor, we did ask. I mean, you asked for it to be returned afterwards and then they refunded it. But you'd already started to re-offset before you did that. No, Your Honor, we asked for the return of the security deposit after the passage of the DVCA statute and after the CPUC became the franchising authority. May I add one more point quickly? Not unless it's... Quickly to Judge Smith's question? I have nothing to add. All right. If you're answering Judge Smith's question, but then I'm going to have you sit down. Absolutely. The point I wanted to make, and this is to your original question, Judge Smith, about what in the statute prevents you from reading it that way, I would say in addition to rewriting Section 542G1, if you read the statute to not apply to the CPUC fee, to not treat it as a franchise fee simply because it goes beyond a cable operator, you would render subsection G2 pure surplusage. If it applied only, if franchise fee applied only to taxes that were imposed solely on cable operators, there'd be no need for an exception for laws of general application. It would also permit states to circumvent the 5% cap just by framing their franchise a little bit differently. That's not only contrary to Congress's intent, but the California legislature understood, I just emphasize, that this would be treated as a franchise fee. Sure. That's why the CPUC fee addresses it. Yes. Thank you. Thank you. Good morning. Good morning. May it please the Court? I'm not going to, don't start the time quite yet until I get your name and then tell me how you're going to use your time, okay? Thank you, Your Honor. My name is Harriet Steiner. I'm with the firm of Best Best and Krieger, and I'm general counsel to the Sacramento Metropolitan Cable Television Commission. I think I'd like to reserve two minutes for rebuttal at the end based on our cross-appeal. Okay. And you're the only one speaking? I am. Okay. So things should be a little bit simpler. All right. Thank you. Good morning. So why didn't you argue below that 47 U.S.C. 555A bars their suit? I guess we may have. I don't think we thought that it did. I thought that we . . . Well, I guess my biggest problem is, if it wasn't raised, the district court evidently addressed it, but I didn't see any place where you argued it. Why should I allow you to raise that argument here when it was . . . when you didn't want to raise it below? So, Your Honor, I think that we raised all the issues that we thought we did. As . . . Yeah, all that you thought we did, but where did you rise 555A, and why should I think about that now since you didn't raise it? The only one that talked about it was the district court, and now you're saying they're wrong. Oh, on the PEG fee? Yeah. But it was our understanding that when we raised the PEG fee, we raised it based on the offset that they took because we felt that the PEG fee was an . . . we know that the PEG fee is an obligation of the franchisee, and because of that, it's an expense of the franchisee, and the fact that they itemize it or in any other way decide to deduct it is improper in calculating gross revenues, and so we . . . Well, let's talk about that. Isn't the PEG fee . . . doesn't it fall squarely within the pass-through exemption provided for by 5860E6? We do not think that it does. Well, I understand your argument, but I guess I'm not . . . I don't find any reason for this argument. It seems to fall directly through that exemption provided by that section. Well, we think that the . . . Why doesn't it? Because the PEG fee was imposed by the State of California through DFCA. It was not imposed by local government. Local government decides whether to implement it, but it is not imposed by local government, and then we believe that under 5860, as you work your way through that statute, which is the one that talks about the payments, it talks about how there will be a franchise fee, and it talks about how local government can't charge fees that aren't included in the division . . . in that division, which is . . . Okay, so if we find that Section 5860 of DFCA does not actually impose PEG fees, then do you lose, or what is your argument for why PEG fees are included in gross revenues? Right. So our argument is that when in determining . . . looking at franchise fees, it looks to all revenue except that revenue that's specifically excluded, and we don't think that 5860E6 . . . we think that looks towards the kinds of fees that are general applicability or fees that are imposed on . . . Okay, but what I'm asking . . . no, that's not exactly . . . I'm saying if we find that Section 5860 of DFCA does not actually impose PEG fees, if we don't agree with you, go hypothetical here. What is your argument for why PEG fees are included in gross revenues? Assume that you lose on your first prong there. What's your next argument? Because we think that they . . . our next argument would be that they will . . . I guess I'm going to take a little . . . we think is an argument, okay? We think is what you think, but you need to say what your argument is and what case law supports that. I guess I don't want to say we don't care what you think, but we don't. We care what the law is, okay? Well, I won't use that phrase at all. So that's my polite way, you know. If you . . . if we were not in a courtroom, I would care what you think. But here, I want to . . . I want your best legal argument. We care what you think, but we don't necessarily give it credence. Well, I would hope that you would give us some credence. Well, the credence is that it doesn't have validity. I mean, that's the problem that I . . . So under the statute, there's a definition of gross revenues, and it lists many, many things all as examples. And then it goes forward and it lists what isn't in the statute, what are recovering taxes and fees not included in the section. But we believe that that is just illustrative. And when it says any other fee not imposed by this section, you should look at the other things that it's talking about. Sales tax, gross receipts tax, utility users tax, those are fees of general and taxes of general applicability that have nothing to do with franchise fees or the DFCA statute in particular. And so I think when they look at that . . . Let me stop you right there. Aren't these purported inconsistencies that you've identified in this language of 5860, aren't they explainable if I say, as the district court did, that the fees are actually imposed by Section 5870 instead of 5860? Well, I don't believe so. I think that those fees are imposed . . . Why? Why? It seems to me that if the district court said that the PEG fees were actually imposed by Section 5870 and not 5860, and they said that . . . and the district court said that was an exception to all these inconsistencies that you're finding in 5860, and therefore the district court suggested that 5870 was the approach she was going to take, and that's where it was. And I'm trying to figure out why that wasn't a good approach. Well, the statute uses the word division in subsection C when it's talking about other fees that go with . . . that are part of the franchise fee, and we think that when you parse that section, we think that that includes 5870. It also includes 5840, which is the application section that requires that the applicant agree to pay the PEG fee. And we think that all . . . and I think under the statute, all of those sections are brought into 5860 through the use of the word division in subsection C and the use of the words included in subsection D. Let me turn back to 555A. Now I'm talking about the argument about, does it arrive from a cable regulation? And you make that argument here, right? Yes. Why didn't you argue it below? Why should I hear it here? I mean, it's an end game. It's an end game if it applies. It's all over for the other side. So . . . Well, to the extent that it was brought up through the briefing and through the district court's decision, we felt that it . . . I mean, I think it was an issue of law, and so we brought it up again to you. I don't know that it's barred because it wasn't specifically enunciated at the trial court. Well, I guess you don't think it's a very strong argument because you said, well, we didn't really . . . we didn't emphasize it because we really didn't think that this suit was barred by . . . that it came under the purview of Section 555AA. So . . . I mean, we always have to think about these things, but if you didn't think it was a very good argument . . . Maybe we . . . Why should we pull your bacon out of the fire here? Well, I would like you to pull our bacon out of the fire, but I think we made the arguments that we felt were appropriate at the district court based on the pleadings, and we made the arguments both with respect to the language of DIVCA and how that related to the Cable Act, and we made the arguments with respect to Glendale. All right. Let me take it. Let me . . . Okay. If we found that this case was barred by Section 555AA on the grounds that Comcast's claims are for monetary damages and not declaratory or injunctive relief, is there a judicial remedy for a cable service franchise challenging a government entity's withholding of a security deposit that was issued to ensure the franchise provides its cable service functions? Well, your Honor, yes, I think that there is. What is it? Because we don't like to bar people, and then it's sort of like . . . and then they have . . . there's no recourse. Well, I think that's what the Glendale case says, which was briefed at length at the, you know, below, and I think the question is that they can't have damages and they can't use self-help. They have to come in for declaratory relief and do it prospectively, and I think once . . . if they had filed that action, then they could have gotten relief because they would have gone back. If they'd have filed a suit seeking relief, you would say then that relief is not subject to any bar? Right. Had they filed a suit challenging the manner in which we . . . the manner in which they . . . Declaratory judgment action would be enough? Well, I believe that the declaratory relief together with injunctive relief would have allowed them from the time that they filed the lawsuit not, you know, to move forward with what they thought was the appropriate way of doing franchise fees, so that there is relief there. It's just not a relief in damages going backwards. They have to make that decision and then proactively do it as opposed to what happened here. Well, the question that I have here is that it seems to me that if I take the, if you will, the reasoning to its end, that it would make Comcast have to wait to be sued by Sacramento Metropolitan Cable for the underpayment of franchise fees to have this disagreement resolved. If they were sued and raised it as an affirmative defense or a counterclaim at that time, that's the only way they could have to really make this, make this argument. And then would you again say 555A bars the consideration? So I think that the Cable Act and the prohibition against damages was intended to prohibit cable operators from going backwards and asking for damages and using self-help and doing their, you know, getting their damages up front without ever asking or determining whether that was appropriate or not. What happened here is, you know, we go back with, you know, independent auditors and we ask them to audit our franchise fees, you know, the franchise fees that are paid to the commission. And at that point, if there's a problem, or we think that there's a problem, we tell Comcast we think there's a problem. But they have put the burden on us to find the needle in the haystack, so to speak, though in this case a pretty big needle, as opposed to doing what they think. You can't find this 300,000 needles. Yeah. So in this, you know, so I think what they, you know, what they have to do is come forward and say, you know, we think the law says X, and if we don't disagree at that, if we disagree at that point, then I think it's up to them to take affirmative action through declaratory relief and injunction, injunctive relief to see what the law says, as opposed to just doing it, not telling anybody about it, doing self-help to, you know, and waiting for us to audit it two or three years later and see if we find it. I mean, so I think that what they're doing is creating their own damages remedy, you know, sort of sub rosa in the way that they approach this. And that's why I think it falls within the Glenn Delegates and falls within that statute. As we look at the CPUC fee, I'm going to change, because I think this is a bigger question. We haven't really talked about that. If the CPUC fee applies not to cable operators but to video service providers, and the district court found this terminology to be significant, it seems to me, then how does that finding affect the 5% franchise fee cap? It doesn't affect the 5%. It just makes that fee a fee of general applicability that's not imposed solely on a cable operator, because they're a cable operator. Well, but isn't what you're really saying that the way states and municipalities can get around this cap is simply describing the fees they impose by language that differs from that found in the Cable Act? Isn't that what you're really arguing? So every time the states and the municipalities can get around the cap because they just label it something different? Isn't that what you're really arguing? We have been taught that labeling isn't necessarily good enough, you know, that when Well, that's what I think. So therefore, I'm having a tough time understanding your argument. So here I think there are two issues at play. When California adopted DVCA, it was looking forward. It looked at cable operators, it looked at OVS operators, and it looked at other types of technologies and potential regulatory entities who were providing video services but doing it in a different way from cable operators. But it just seems that your argument, if we accept your argument, then you can actually get 8 percent out of people as opposed to the 5 percent cap, because you just circumvent it. What you can't do through the front door, you do through the back door. I don't think that we can do that, because I think this is a regulatory fee for the application for franchises and for ongoing regulation of the franchise. And I think it has to be done in a way that moves it forward with that group. And I think that there is both. So I think that there are more than cable operators But it takes you above the 5 percent cap, if we go with your argument, right? Well, I think that they're in a totally different category, because All right, but it would be above the 5 percent, if we buy your argument. It would be in addition to the 5 percent, not above the 5 percent. One last question, if you don't mind. Are you familiar with the case of Liberty Cablevision out of the First Circuit? I can't say that I am. I'm sorry. Because I was going to say, why can't we apply the test there? I'm sorry. I obviously didn't do enough homework for all these cases. Well, okay, we took you over, and so I'm still going to give you two minutes for rebuttal, because we spent more time with them. So if you've got a computer with you, you want to give her a cite? No, if she's not familiar with it, that's fine. Okay. All right. Thank you. We'll give you two minutes on rebuttal. Thank you. I wish you'd have told me. I'm sorry, I didn't have it for you. I want to make sure that we're able to get to the panel's questions about 5.5a. So I'll make a couple of quick comments. Well, I thought you weren't going to talk about 5.5a. My colleague is. Yeah, I want to make sure that the panel's able to do that. All right, but wait. All right. So wait. Two minutes. He has two minutes now. I do, but I can also just yield my time. I want to make sure that there's enough time to answer. All right, but wait. Just stop talking for a second. Okay? As lawyers, the lips are always moving. Let her put the two-minute clock on for us. By the way, while we're getting the two-minute clock, the cite is, ma'am, the cite is 417, Fed 3rd, 219. Okay. Lips may move. Thanks, Judge Kelley. So with respect to the CPUC fee, just a couple of quick points. If you listen to my friend's presentation, you'll see exactly why the district court's interpretation of the statute and the interpretation that's urged by SMCTC is wrong. She said that the CPUC is a franchise fee because it was imposed solely on cable operators, solely because they are cable operators. So again, it requires rewriting the statute and moving the word solely so that the tax applies solely to cable operators. That is not what the statute says. And it makes sense that Congress would write it that way. Congress understood that there were going to be, particularly after the Telecommunications Act of 1996, that there would be telephone companies and potentially other facilities-based providers of video service. And yet it didn't change the definition of franchise fee to turn on how a state defined its franchises or structured its franchise fee. It wanted to establish a uniform 5% cap. And so it makes good sense that the definition of franchise fee doesn't turn on state law. I would note that there's no effort to circumvent that definition here because California recognized in the CPUC fee that it would be subject to the requirements of Section 542, and that's the definition of franchise fee under federal law. So even California recognized that. With respect to whether it's a law of general applicability, that provision, Section G2A, has to be construed together with the definition of franchise fee. They are complementary. And because the CPUC fee falls so squarely within the scope of a franchise fee, it's not a law of general application. The fee refers to Section 542 of the Cable Act. That itself tells you that it's not a general law. It's certainly not like a business tax or an entertainment tax as the legislative history illustrated. It's not a utilities fee. There are other statutory provisions requiring that... Your time's up. Thank you, Your Honor. Okay, so now we're going to five minutes on 55AA, right? Yes, thank you, Your Honor. May it please the Court. And the PEG fee. Jeff Wu for the Comcast Cross at the leaves. And PEG, yes. And the PEG fee as well. Yes. Your compatriot says you're the expert on PEG fees and 555A, so get ready. So may it please the Court. So on the 55AA issue, first of all, note that the argument that 55AA bars the conversion claim, that argument has been waived. In the district court and in its opening brief, SMCTC's consistent argument has been to invoke 555A to challenge what it calls Comcast's unilateral deductions in its pre-litigation calculation of the fee payments. 555A, on its face, applies to court proceedings. So the challenge to the pre-litigation payments is it lacks merit as the district court correctly held. But just a minute. Once the calculation, the payment of the fees, once those disagreements were raised in the response of pleadings, how could the district court award relief the return of this security deposit without resolving them? Well, because the district court addressed the issue. And if they resolve them, then 555A applies. The district court addressed the issues that were raised by the parties in their pleadings, and SMCTC did not plead as a defense 555A. It pled a different California state statute claiming government immunity. So this issue was never raised below, and it was only addressed by the district court while sponsoring a footnote to its summary judgment order. And again, on appeal, SMCTC... Well, frankly, because the district court issued the decision regarding it, how can you say that it's waived? Don't we have to address it? It's also waived because it's not raised in SMCTC's opening brief on appeal. So as this court has consistently ruled in many of its cases, arguments not raised in the opening brief are waived. I'd also like to address Judge Collingham's question about whether there is a judicial remedy. If it isn't waived, how can I distinguish City of Glendale decisions? So City of Glendale involves a completely different situation. Here we have a confiscation of property by SMCTC. There was no dispute that when the local franchise terminated, SMCTC was entitled to the return of its deposit. And SMCTC did, before there was any court proceedings, demand the return of the deposit. I'm sorry, I meant Comcast demanded the return of the deposit. But instead of returning the deposit, SMCTC just confiscated it. There is no case applying 555A to immunize local governments for confiscation of private property with no recourse for the property owner. City of Glendale did not involve that circumstance. In City of Glendale, the cable company had overpaid its fees because the local government had used a fairly elaborate, for lack of a better word, scheme to disguise its use of PEC fees so that it would not counter the federal 5% cap. So after finding that out, the cable company filed an action for declaratory relief. And the court there held that But just a minute, if I look at the City of Glendale decisions, and this is what I read in them, it seems to me to say that you cannot plead around a 47 U.S.C. 55A suit when the effect of your pleading is simply to seek an award of damages, and now I'm quoting, in a suit that effectively arises from cable regulation, which is exactly what happens here. So what happened here does not arise from cable regulation because what happened was not any regulatory action, but the sheer confiscation of private property by SMCTC. There's no case that has applied to 55A in this situation. Well, but just a minute, isn't it a fact that what you did is rather than pay the fees that were applicable, you simply deducted the fees that you thought were applicable from the fees that you were going to pay because of the security deposit that was taken? So again, I'm trying to figure out how do I say 55A does not apply? So the security deposit was tendered under the prior legacy local franchise. That franchise expired in 2011. The fee dispute pertains to fees owed under the subsequent state franchise. So the local government was not actually exercising regulatory authority under the local franchise when it seized the deposit for purposes of the separate state franchise. But you would agree with me, wouldn't you, that disputes over franchise fee payments that arise from cable regulations are those that are regulated by 47 U.S.C. 555A. Now, why isn't this one of those? Because, again, this is a confiscation of property that no cases ever applied 555A to this situation. And there is no... Well, that's just a matter of whether it's directly applicable or tangentially applicable. And that's why I said look at the city of Glendale. So there are a couple of reasons why that... Well, it seems that you really effectively tried to plead around that. And you effectively... The other side didn't catch it, but the district court caught it. So that's... It seems like your pleading was quite careful to try to avoid invoking 555A. Well, in fact... Because I think you... I think Comcast knows well of 555A. Your Honor, in the district court proceeding, as well as in the pre-litigation correspondence between the parties, SMCTC's consistent theory has been what they call the unilateral deduction theory. And this is described in the correspondence attached to the Steiner Declaration, which starts at ER 204. And this has been the same theory they pursued both before litigation and during litigation. So the fact that they didn't raise it is that because they chose the theory they pursued, and that is the unilateral deduction theory. All right. I want to make... We're over your time, so I want to make sure that Judge Smith has time. Are you done? Well, I would have asked something on the BEG piece. Go ahead if you want. We're going to take you... No, you're not going where you want to go. You're going where he wants to go. Okay? Are PEG fees imposed by the California Public Utilities Section 5860C? They are not. There's nothing in 5860 that addresses PEG fees. PEG fees are authorized by 5870, and Subdivision N of 5870 authorizes local governments to impose the fees, and indeed, specifically uses the word impose in reference to local governments. So the fee is not imposed by 5860. I just wanted to make sure you agreed with me. All right. All right. I had a couple answers to... No, no. Your side's already four minutes over. And I think if... Unless either of my colleagues have any additional questions. Okay. No. Thank you. Thank you. All right. And then your side was over, but I'm giving you an additional two minutes because we want to have our questions answered. So go ahead. Thank you, Your Honor. I guess I would note, first off, that we did not confiscate their security deposit. We offset it based on what we believe to be improper unilateral deductions of the franchise fee that were owed to us. So... And we... And so this case came up in a weird... Well, that's the matter of semantics. If I don't get my refund back because you just say, I'm not going to let you make deductions, I didn't get my refund back. Well, California law allows for offset if someone sues you or if there's a dispute and the other side has... And both sides have claims, then it allows for offset. And so we think that we followed what California law allows with respect to the two disputes. But the problem that I have with your argument is simply this. Whatever you want to call it, a confiscation or an offset or whatever, offset sounds better for your side. How do they get their money back? Well, if they had come in 2011 or before there was a dispute and asked for the money back and we had gone back and said, oh, we do have the money... Has the statute of limitations gone? No. Well, how can they get their money back if we go with what you want to say? Supposing we say, you can't bring this suit here because of 555A, when are you going to give their money back? They will get their money back as part of the judgment of this lawsuit because then they would have... If they were correct and we were incorrect, then by the very nature of the offset, they will get a return of their money from the security deposit. So they are not without... So they have a remedy for that. The remedy that Glendale and I think the Cable Act look at is a remedy as to what happens when there is a claim under the Cable Act itself. And I did actually find Liberty Cable, but I don't know if you want me to address that in my last... You don't have any minutes left. All I was going to say is, why don't I apply the same principles they applied there in determining whether this is a fee of general applicability or not? That's what they were determining and they developed a test. Why shouldn't I apply that test here? Because if I applied that test here, you lose. I think what they were looking at is multiple charges for the same... But they did apply a test, right? And they put a test together. And if I apply that test here, you lose on that issue. Why shouldn't I? I would think we would still win because if you pull back from what Divco looks... From the law, and you look at what the CPUC does with regulated entities, that they charge a fee geared specifically to each regulated entity that covers their cost of regulation. And it all... Every single one of the entities, whether it's the electric company, the gas company, the railroad, they all pay the same kind of fee. The only reason it's slightly different is because they don't charge the video service providers what it costs to regulate railroads. So I think that in that... This is clearly something that's applied to utilities, applied to common carriers, and applied to video service providers as to the CPUC fee. So I don't think that we would lose under Liberty Cable to the extent that I was able to peruse it in the last two minutes. Got your argument. All right, thank you both for your argument. Pretty much basically, at our request, went over evenly. So it all worked out, even though probably everyone's unhappy. But that being said, this matter will be submitted, and we'll get our decision out to you. Thank you.
judges: Callahan, N.R. Smith, Olguin